**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHERYL LYNN PEASE,** | : | **Civil No. 1:21-cv-1650** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

In this Social Security appeal we are called upon to consider the sufficiency of an Administrative Law Judge's (ALJ's) analysis of the disabling effects of the pain experienced by the plaintiff. Specifically, we must determine whether substantial evidence supported the ALJ's determination that Ms. Pease's back, hip, and hand impairments were not totally disabling. In this regard, the Supreme Court has underscored for us the limited scope of our substantive review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis

deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid.</u>; <u>see, e.g.</u>, <u>Perales</u>, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S. Ct. 206. <u>See</u> <u>Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

<u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019).

Cheryl Pease filed an application for disability and disability insurance benefits under Title II of the Social Security Act on October 15, 2019. A hearing was held before an ALJ on January 4, 2021. Following that hearing, on February 5, 2021, the ALJ found that Pease's back pain was not totally disabling and denied her application for benefits. Pease now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. In particular, Pease contends that the ALJ erred in the evaluation of the severity of her pain. However, three out of four opining medical sources found that Pease could perform light work notwithstanding her reported chronic back pain. Moreover, while the clinical record confirmed that Pease suffered from persistent back pain, substantial clinical evidence supported the medical consensus view that Pease's pain was not totally disabling. Therefore, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" <u>Biestek</u>, 139 S. Ct. at 1154, we

find that substantial evidence supported the ALJ's findings in this case. Accordingly, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   <u>Statement of Facts and of the Case</u>

On October 15, 2019, Pease applied for disability benefits, alleging an onset of disability on April 3, 2019. (Tr. 15). Pease alleged disability due to a failed back syndrome, post laminectomy syndrome; chronic impingement and degenerative changes in the hips; mild right wrist impingement syndrome; and osteoarthritis of the bilateral wrists. (Tr. 17). Pease was 50 years old on the date of her alleged onset of disability, she had a high school education, and she had past work experience as a riveter and assembler. (Tr. 23).

Pease's primary medical impairments related to her failed back syndrome, a longstanding condition which had resulted in a lumbar decompression laminectomy in 2013. (Tr. 304). In her administrative hearing testimony and her adult function report, Pease described the pain she experienced due to her back problems as disabling. (Tr. 38-49, 186-93). However, there was an equivocal quality to these subjective reports of pain since Pease also acknowledged that she was able to perform some tasks like cooking, cleaning, laundry, and shopping notwithstanding her back impairment. (<u>Id.</u>)

3

Pease's clinical treatment history had a similarly mixed and equivocal quality. That treatment history disclosed that in March of 2018, Pease received a spinal stimulator implant in an effort to address this chronic back condition. (Tr. 269-71, 333-37).

Initially Pease reported positive results from this procedure. Thus, in March of 2018 it was noted that Pease was "doing well" following the implant of this spinal stimulator. (Tr. 339). At that time her pain level was greatly diminished. (Tr. 529). In a follow-up appointment on May 28, 2018, it was noted that Pease was not experiencing much pain and Pease denied any abnormalities in her gait. (Tr. 534-5). Similarly, during a June 26, 2018 appointment Pease reported that she was getting good relief from the spinal stimulator. (Tr. 345).

However, by July 2018, Pease began complaining of incisional pain. (Tr. 539). Pease's complaints became more pronounced over time. Thus, on December 3, 2018 she rated her discomfort at a five out of a ten point scale and was seeking to have the spinal stimulator removed. (Tr. 541-44). Pease persisted in these complaints relating to the spinal stimulator during clinical encounters on January 28 and February 20, 2019. (Tr. 375-76, 391-93). In March of 2019, at Pease's request, she was scheduled for the removal of the spinal stimulator. (Tr. 398-401).

Pease's spinal stimulator was removed on April 4, 2019, a date that corresponded with the alleged onset of her disability. (Tr. 407-10). Once again,

Pease initially reported improvement in her pain level and quality of life following this procedure. Thus, post-operative treatment notes from May 1 and June 10, 2019, indicated that Pease's upper thoracic back pain had completely resolved and indicated that she was doing well and exhibited some degree of improvement. (Tr. 418-28). It was also noted that Pease had no difficulty ambulating, had a normal gait and stance, and displayed 5/5 motor strength in all extremities. (Id.)

However, by August of 2019, Pease was once again complaining of back pain, and reported difficulties ambulating. (Tr. 458-61). Pease rated her pain as a five on a ten-point scale. (Tr. 564, 569, 575). While she was reporting this renewed back pain in the Fall of 2019, Pease also related that her pain was not really worse than it had been for years. (Tr. 502). Moreover, in September of 2019, Pease stated that she was able to tolerate a car trip to Florida notwithstanding her back discomfort. (Tr. 577).

Clinical tests performed on Pease during this timeframe also failed to document any profound organic impairments which would account for her reported level of pain. Thus, X-ray, MRI, and EMG studies conducted on Pease in August and September of 2019 and March of 2020 generally reported unremarkable findings. (Tr. 463-70, 508-13, 613-17, 665-66).

On January 24, 2020 Dr. Justine Magurno conducted a consultative examination of Pease as part of this disability application process. (Tr. 621-30).

The report of this examination documented Pease's subjective complaints of pain, (Tr. 621), but also indicated that Pease reported that she cooked, cleaned, did laundry, and shopping as needed. (Tr. 622). Dr. Magurno also found that Pease displayed no acute distress, had a normal stance and gait, did not need an assistive device to ambulate, and required no help rising from a chair or climbing onto and off of the examination table. (Tr. 623). Based upon her examination of Pease, Dr. Magurno concluded that Pease retained the residual functional capacity to perform a range of light work. (Tr. 624-30).

Two other state agency experts also concluded based upon the mixed and equivocal medical evidence that Pease could perform some light work. Thus, on February 11, 2020, Dr. Minda Bermudez conducted an initial disability determination which found that Pease retained the ability to do light work. (Tr. 58-69). Upon reconsideration on September 5, 2020, a second state agency expert, Dr. Robert Mogul, also found that Pease could perform a range of light work notwithstanding her impairments. (Tr. 71-82). In contrast to this medical consensus, one of Pease's treating care-givers, Chad Jackson, PAC, opined in December of 2020 that the plaintiff was disabled due to her back pain. (Tr. 833-34).

It is against this medical backdrop that the ALJ conducted a hearing in Pease's case on January 4, 2021. (Tr. 31-56). At the hearing, Pease and a

Vocational Expert testified. (Id.) Following the hearing, on February 5, 2021, the ALJ issued a decision denying Pease's application for benefits. (Tr. 12-25).

In that decision, the ALJ first concluded that Pease met the insured status requirements of the Act and had not engaged in substantial gainful activity since the date of the alleged onset of her disability in April of 2019. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Pease had the following severe impairments: post laminectomy syndrome; chronic impingement and degenerative changes in the hips; mild right wrist impingement syndrome; osteoarthritis of the bilateral wrists. (Id.) At Step 3, the ALJ determined that Pease did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 18).

Between Steps 3 and 4, the ALJ concluded that Pease had:

[T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally lift and carry 11-20 pounds, frequently up to 10 lbs. She can sit for 3 hours total in a workday and for 30 minutes at any one-time. She can stand for 3 hours total in a workday but only for 30 minutes at any one-time. She can walk a total of 3 hours in an 8-hour workday but only for 30 minutes at any one-time. She requires the freedom to change positions while on task and at the workstation. She can frequently reach overhead bilaterally, frequently finger, handle and feel bilaterally. She can frequently push and pull bilaterally. She can occasionally operate foot controls bilaterally. She can occasionally climb stairs and ramps, stoop, kneel, crouch and crawl but never climb ladders, ropes, or scaffolds. She should have no exposure to unprotected heights, moving mechanical parts, can frequently operate a motor vehicle; can have no exposure to vibration

(Tr. 18-19).

In reaching this RFC determination, the ALJ s "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (T. 19). Ultimately, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 20).

In reaching this conclusion, the ALJ assessed the plaintiff's reports regarding the severity of her pain against the entire clinical record. On this score, the ALJ aptly observed that there were instances in which Pease's "gait and stance was normal and there was no difficulty ambulating." (Id.) The ALJ also cited the unremarkable MRI and X-ray findings relating to Pease, (Tr. 20), and noted that:

> Consultative examiner, Justine Magurno, M.D., evaluated the claimant on January 24, 2020. The claimant reported that she had a diagnosis of failed back syndrome, low back pain and hip impingement. She reported that her symptoms were aggravated by car rides, prolonged sitting, and prolonged standing. She reported improvement with lying down. The claimant noted that she continued to have bilateral hand pain. She reported that she attributed her symptoms to repetitive use in her job. Her symptoms were aggravated by repairing computers and paying bills. She reported hand cramping and tingling. She stated that she was told she did not have arthritis and

there was no treatment for her symptoms. She noted that she does have arthritis in her spine and hips (Exhibit 9F, p. 1). She reported that she has help with household chores from her husband. She stated that she cooks daily and she is able to do laundry, clean and shop as needed (Exhibit 9F, p. 2). On examination, the claimant was not in acute distress and she had a normal gait. She declined to heel and toe walk. She was able to rise from a chair without difficulty (Exhibit 9F, p. 3). Straight leg raising was negative and there was no evidence of joint deformity. Hand and finger dexterity was intact (Exhibit 9F, p. 4). Dr. Magurno opined the claimant could frequently lift and carry ten pounds and occasionally lift and carry 20 pounds. She could sit, stand and walk for 30 minutes at a time for a total of three hours each (Exhibit 10F, pp. 2-3). She could frequently reach overhead, push and pull with both hands and continuously reach in all directions, finger and feel with both hands. She could occasionally climb stairs and ramps, stoop, kneel, crouch and crawl. She could frequently balance but never climb ladders, ropes or scaffolds (Exhibit 10F, p. 4). She would be unable to walk a block at a reasonable pace on rough or uneven surfaces (Exhibit 10F, p. 6).

(Tr. 21).

The ALJ then concluded, based upon an assessment of this evidence, that the medical opinion consensus expressed by Drs. Magurno, Bermudez, and Mogul—all of whom found that Pease could perform some range of light work—was persuasive. (Tr. 22-23).

Having made these findings, the ALJ determined that Pease could not perform her relevant past work but found at Step 5 that there were other light work jobs in the national economy that she could perform. (Tr. 23-24). Having reached these conclusions, the ALJ found that Pease was not entirely disabled and denied this claim. (Tr. 25).

This appeal followed. (Doc. 1). On appeal, Pease challenges the adequacy of the ALJ's decision, specifically arguing that ALJ erred in the treatment of the severity of her subjective symptoms. As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision is supported by substantial evidence, and we will affirm the decision of the Commissioner.

## III.   **Discussion**

### A.      **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d

1058, 1064 (3d Cir. 1993). But in an adequately developed factual record,

substantial evidence may be "something less than the weight of the evidence, and

the possibility of drawing two inconsistent conclusions from the evidence does not

prevent [the ALJ's decision] from being supported by substantial evidence."

Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if

the Commissioner's decision is supported by substantial evidence the court must

scrutinize the record as a whole."   Leslie v. Barnhart, 304 F. Supp.2d 623, 627

(M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review

in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.;
> see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation
> marks omitted). It means—and means only—"such relevant evidence
> as a reasonable mind might accept as adequate to support a
> conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See
> Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d
> 143 (1999) (comparing the substantial-evidence standard to the
> deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons

for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d

Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of

the ALJ's decision under a deferential standard of review, but we must also give

that decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

### B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a

claimant must demonstrate an inability to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A);

42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To

satisfy this requirement, a claimant must have a severe physical or mental

impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1),

416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work

experience and RFC.   20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F. 3d 429, 433 (3d Cir. 1999).

C. <u>**Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms.**</u>

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of a claimant's reported pain.

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir.1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). It is well settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the

cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this symptom severity assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence, or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to medical signs and laboratory findings, diagnoses, and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the

assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015); George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014).

### D.   The ALJ's Decision in This Case is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971),

and "does not mean a large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but rather "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek, 139 S. Ct. at 1154. Judged against these highly deferential standards of review, we are constrained to conclude that substantial evidence supported the ALJ's decision that Pease was not entirely disabled.

Here, Pease challenges the ALJ's decision, arguing that the ALJ erred in assessing the severity of Pease's symptoms; however, substantial evidence supported the ALJ's evaluation of this issue. On this score, we note at the outset, that the ALJ's determination was supported by the greater weight of the medical opinion evidence in this case from both an examining source and state agency experts. The ALJ did not err in considering this medical opinion evidence. Quite the contrary, it is well settled that "[b]ecause State agency medical . . . consultants . . . are experts in the Social Security disability programs," the ALJ was entitled to rely upon a factually supported state agency expert opinion "about the nature and severity of an individual's impairment(s)" in concluding that Pease was not wholly disabled. See Chandler, 667 F.3d at 361; Deiter v. Berryhill, No. 3:16-CV-2146, 2018 WL 1322067, at *6 (M.D. Pa. Feb. 5, 2018), report and recommendation adopted, No. 3:16-CV-2146, 2018 WL 1315655 (M.D. Pa. Mar. 14, 2018).

The ALJ also appropriately considered Pease's self-reported activities of daily living when concluding that she retained the ability to perform some range of light work. Thus, there was no error here. See Stancavage v. Saul, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

Likewise, the ALJ was required to assess the equivocal clinical record when making this symptom severity determination. In this regard, objective tests, including x-rays, MRIs, and EMG studies, did not identify severe organic impairments. Moreover, while mixed, treatment records contained notations indicating that Pease's symptoms periodically improved, and she stated that she was able to travel to Florida by car notwithstanding her symptoms. This clinical evidence provided further support for the ALJ's findings in this case.

We also conclude that the ALJ sufficiently addressed Pease's alleged use of a cane to ambulate. On this score, "Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides 'medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]' SSR 96–9p." Phillips v. Colvin, No. 1:16-CV-1033, 2017 WL 3820973, at *9 (M.D. Pa. Aug. 16, 2017), report and recommendation adopted sub nom. Philips v. Colvin, No. 1:16-CV-1033, 2017 WL 3780138 (M.D. Pa. Aug. 31, 2017). " 'To find that a hand-held assistive device is medically required, there must

be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed [.]' Social Security Ruling 96–9p." <u>Howze v. Barnhart</u>, 53 Fed.Appx. 218, 222 (3d Cir. 2002). In the instant case, while Pease reported that a doctor had recommended the use of a cane, (Tr. 45), there was a paucity of proof that the cane was medically necessary and, in fact, it was reported that Pease did not use a cane during her consultative examination with Dr. Magurno. (Tr. 623). On these facts, the ALJ was not required to account of the use of a cane in formulating an RFC for the plaintiff.

At bottom, it appears that the plaintiff is requesting that this court re-weigh the medical and opinion evidence. This we may not do. <u>See</u> <u>Chandler</u>, 667 F.3d at 359 (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); <u>see also</u> <u>Gonzalez v. Astrue</u>, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a <i>de novo</i> review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does

not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Finding that this deferential standard of review is met here, we conclude that a remand is not appropriate for the purpose of further assessing this opinion evidence.

In sum, on its merits the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and we will affirm the Commissioner's final decision.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: January 3, 2023